Herbert, J.
The dispositive question here is whether the service of summons upon the defendant on March 17, 1960, was valid. This question may be stated more specifically in this language: Was such service of summons invalidated by the use of trickery or force?
It is essential to the solution of the question that the evidence pertaining to the “service” be presented with particular care and accuracy.
On April 25, 1960, in an oral hearing before the court, witnesses were called to the witness stand, and they testified at length on the issues raised by defendant’s motion to quash service of summons.
Upon receipt of the summons by the sheriff on March 7, 1960, the duty of personal service of summons upon the defendant was assigned to one of the deputy sheriffs, George Clark, whose duties were largely in the field of service of process.
He was directed to the premises of the Dayton Envelope Company, 907 Miami Chapel Road, Dayton, Montgomery Coun *485 ty, Ohio, where defendant was an official and also an employee. Upon three different days, Clark endeavored to find defendant at his place of employment but without success; his queries as to the whereabouts of defendant receiving vague, indefinite and evasive replies.
Clark reported his efforts to serve the defendant to his superior and he was relieved of any further connection with the case. Plaintiff’s attorney then employed Thomas C. Stegeman, a special police officer of the city of Dayton, to secure personal service upon the defendant. He was appointed a special deputy by the sheriff for this purpose on March 17, 1960. Stegeman proceeded to the offices of the envelope company and received the same reception accorded to Clark. However, Stegeman waited about the premises. At about 5:00 p. m., he observed a man hurrying to a car in the parking lot. This car bore the auto license-tag number issued to the defendant. He entered the car and drove away at a high rate of speed followed by Stegeman. The latter was not attired in a uniform nor did his car have any markings or color indicating that it was being used by a law enforcement officer.
When the “car” neared 501 Stewart Street (a four-lane highway) in Dayton, Stegeman, in his lane of traffic, drove alongside the other car in its lane. Stegeman displayed his police badge. He “did not crowd him off the road at all,” or change the course of his automobile. The other driver “stopped of his own free will after he saw the badge.” The foregoing-quoted testimony is that of Stegeman, as is the following:
“I stayed in my lane of traffic. He stayed in his.”
Stegeman got out of his car on his left side and walked around to the driver’s side of the other car.
The driver lowered the window of his automobile, whereupon Stegeman identified himself and asked whether the other man was “Mr. Hurley.” The latter replied in the affirmative, and Stegeman handed the summons to him and left.
Stegeman and the defendant were the only witnesses to the occurrence of the serving of the summons. Defendant, for some reason, did not take the witness stand but did call Stegeman as his witness. He appeared to be a willing witness.
The testimony of Deputy Sheriff Clark and Special Deputy *486 Stegeman, together with the failure of the defendant to take the witness stand, permits a reasonable inference that the defendant was endeavoring to avoid service of summons. It is the duty of a defendant within the jurisdiction of the court to submit to service. Gumperz v. Hofmann, 283 N. Y. Supp., 823.
Defendant had no reason to fear that Stegeman was an officer engaged in the enforcement of the traffic laws, because such officer was not attired in any uniform, nor was his automobile marked in any distinctive manner. Sections 4549.13, 4549.14, 4549.15 and 4549.16, Revised Code. It also seems reasonable to infer from all the evidence that the defendant may have concluded that Stegeman was one of the officers who had been endeavoring to serve the defendant with summons daily for a period of four days.
The question here is one of first impression. New are the cases in other jurisdictions that shed any light on the problem here.
Nevertheless, the evidence of record, together with the reasonable inferences that may be drawn from such evidence, supported by the Constitution of the state of Ohio and the statutes, tends to support the conclusion that the service was valid and consistent with substantial justice.
Section 16, Article 1 of the Constitution of Ohio, provides in part that:
“All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.”
Without service of summons, the courts would not be open for an injury done and no person would have a remedy. The administration of justice would be thwarted, and the foregoing provision of our Constitution would be vain and futile.
The duty of a citizen within the jurisdiction of a court to submit to service arises from this provision in the organic law. The language of the section is positive and mandatory.
The statutes provide for service of summons in mandatory language. Section 311.08 of the Eevised Code states in part that:
*487 “The sheriff shall execute every summons, order or other process, make return thereof, and exercise the powers conferred and perform the duties enjoined upon him by statute and by the common law.” (Emphasis added.)
Section 2703.08 of the Eevised Code continues in this language:
‘ ‘ Service shall be made at any time before the return day, by delivering a copy of the summons, with the endorsements thereon, to the defendant personally, or by leaving a copy at his usual place of residence * * (Emphasis added.)
Section 2703.03 of the Eevised Code sets out in clear and precise language the procedure to be followed after the filing of petition and praecipe in the office of the clerk, to wit:
‘ ‘ The summons must be issued and signed by the clerk, and be under the seal of the court from which it is issued. Its style shall be: ‘The State of Ohio......County,’ and it must be dated the day it is issued. It shall be directed to the sheriff of the county, who shall be commanded therein to notify the defendant that he has been sued * * (Emphasis added.)
The cases where service of summons has been quashed arose where fraud and trickery were used to entice or inveigle a defendant to come within the jurisdiction of the court and thereby have service obtained upon him. 44 Ohio Jurisprudence (2d), 53, 54, Section 38, states the rule as follows:
‘ ‘ The rule generally recognized is that if a person resident outside the jurisdiction of the court and the reach of its process is inveigled, enticed, or induced, by false representation, deceitful contrivance, or wrongful device for which the plaintiff is responsible, to come within the jurisdiction of the court for the purpose of obtaining service of process on him in an action brought against him in such court, process served upon him through such improper means is invalid, and upon proof of such fact the court will, on motion, set it aside.”
The few cases decided outside Ohio allow considerable latitude to a process server in the means that he uses to secure service upon a person already within the jurisdiction of the court. Gumpers v. Hofmann, supra, in its headnotes, states the law in this language:
*488 “1. Process. Service of summons held not invalid because procured through meeting arranged with defendant by misrepresentation of process server’s identity and purpose.
“2. Process. Service of process is not invalid merely because secured by deception practiced on defendant, since persons within jurisdiction have unenforceable duty to submit to service.”
Briefly, the facts in the Oumpers case are that the defendant was a resident of Buenos Aires visiting New York City and staying at a hotel. The defendant was a physician. The process server in New York, failing to secure personal service upon defendant at his hotel room, represented himself to be Dr. Goldman and telephoned defendant, saying that he, “Dr. Goldman,” had a letter for defendant from the president of the New York County Medical Society, which he, “Dr. Goldman,” was required to deliver in person. Thereupon the defendant came down into the lobby of the hotel where the pseudo “doctor” served him with process. The court, in its opinion, spoke as follows:
“We think that legal as well as practical considerations preponderate in favor of the rule that service is not to be invalidated merely because secured by a deception practiced on the defendant, which, in no true sense, was injurious to him. It may fairly be said that there is a duty upon persons within the jurisdiction to submit to the service of process. Although that duty is not legally enforceable, it is, broadly speaking, nonetheless an obligation which ought not to be evaded by a defendant whom it is attempted to serve. The deception here was, therefore, practiced for the purpose, and had only the effect, of inducing the defendant to do that which in any event he should voluntarily have done.
“We cannot fail to be aware of the difficulties which beset the server of process on a defendant who is unwilling to be served, for it is evident that if he discloses his intentions, such a defendant is likely to be even more inaccessible than before. For that reason alone, we should hesitate to surround the service of process with unnecessary limitations. Needless to say, we do not approve of misstatements made to procure service of process, but, except where the defendant has been lured into the *489 jurisdiction, we think the service is separable from these.” See. Hohmann & Barnard, Inc., v. Combined Welder & Machine Corp., 19 Misc. (2d), 904, 192 N. Y. Supp. (2d), 397.
In the instant case, defendant was not enticed or lured into the jurisdiction of the court. Defendant regularly and voluntarily came into Montgomery County in the course of his employment. By reason of the difficulties frequently encountered by officers charged with service of process, a certain latitude is allowed the process server to make some misrepresentations about himself and to indulge in some deception in order to comply with the duty placed upon him, providing that no injury is done defendant.
However, the process server here did not engage in any deception, any force, any trickery. He followed the defendant, drove alongside him and displayed his badge, whereupon defendant came to a stop. Each car was in its own lane. Stegeman came around to the driver’s side of defendant’s car, and defendant lowered the window. He was then served with process. The conduct of the process server was consistent with the administration of justice, and his service of process was valid.
Therefore, the judgment of the Court of Appeals is reversed, and the cause is remanded for further proceedings according to law.

Judgment reversed.

Taft, C. J., Matthias, O’Neill and Gibson, JJ., concur.
Zimmerman and Griffith, JJ., dissent.